IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>    Plaintiff,<br><br>  v.<br><br>HOOPS ENTERPRISE LLC; and ANTHONY KORNRUMPF,<br><br>    Defendants.<br>_____/<br>AND ALL RELATED CLAIMS<br>_____/ | No. C 10-2769 CW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION<br>(Docket No. 109) |

Plaintiff Adobe Systems Incorporated seeks a preliminary injunction preventing Defendants Anthony Kornrumpf and Hoops Enterprise, LLC from engaging in any business whatsoever with unauthorized Adobe products pending the outcome of this litigation. Defendants oppose the motion. Having considered the papers filed by the parties and oral arguments, the Court GRANTS Adobe's motion in part.

## BACKGROUND

Adobe initiated this copyright and trademark infringement lawsuit on June 24, 2010, alleging that Defendants sell Adobe software through the use of the Internet auction site eBay and the website www.lookoutdeals.com, among other services, and that Adobe has not licensed Defendants to make or distribute copies of its software. Adobe also alleges that Defendants use, without a

license, images similar or identical to Adobe trademarks as part of their online business. Adobe seeks relief pursuant to the Copyright Act, 17 U.S.C. §§ 101, et seq., and the Lanham Act, 15 U.S.C. §§ 1501, et seq.

Adobe states that it distributes software for which it holds the copyright pursuant to restricted licensing agreements and does not transfer title to the software at any time. Coombs Decl. ¶ 4, Ex. C (Stickle Decl.) ¶ 5. The licensing agreements restrict the use, location of distribution, transfer and sometimes who is qualified to obtain the product. Id. One type of restricted software that Adobe distributes is Original Equipment Manufacturer (OEM) products that are distributed in a bundle with approved hardware components. Id. at ¶ 7. The bundles are product-specific and Adobe's product may not be unbundled and sold separately or re-bundled with products not previously approved by Adobe. Id.

In conjunction with Defendants' prior motion for a preliminary injunction, Defendants proffered evidence of a contract Adobe uses with hardware manufacturers for the distribution of its software. See Boyce Decl. in Supp. of Defs.' Mot. for Prelim. Inj., Docket No. 69, ¶ 15. The contract states that Adobe provides only licenses to the manufacturer and that the manufacturer "shall not at any stage have title to the physical property or the Intellectual Property in the Software Products." Boyce Decl. in Supp. of Defs.' Mot. for Prelim. Inj., Ex. E

2

¶ 12.3. While Defendants state that discovery has revealed that the "actual contracts executed by Adobe do not match the 'template' previously provided," Opp. at 12, Defendants do not offer copies of these contracts, describe how they differ from the contract previously offered into evidence, or argue that the actual contracts differ from the restrictive terms described above in the Stickle declaration.

Defendants purchase OEM versions of software that have been unbundled from the hardware with which they were originally packaged. Coombs Decl. ¶¶ 2, 5, Ex. A ¶ 2, Ex. D (Kornrumpf Depo. Tr.) 80:24-82:15; Kornrumpf Decl. ¶¶ 2, 5. While Defendants sell other software products as well, the majority of their business is based on Adobe products. Kornrumpf Decl. ¶ 13. Until earlier this year, Defendants resold the OEM software through eBay. Id. at ¶¶ 8, 13. The resold software was sometimes sold by itself and was sometimes packaged with items such as a piece of photo paper, a blank DVD, or a media card reader, which Adobe had not authorized for bundling. Coombs Decl. ¶ 3, Ex. B (Fernandez Decl.) ¶¶ 5-11; Stickle Decl. ¶¶ 9, 10; Kornrumpf Depo. Tr. 44:2-24. Adobe, through an investigator, made several test purchases of Adobe OEM software from Defendants through their eBay monikers. Fernandez Decl. ¶¶ 5-11; Stickle Decl. ¶¶ 9, 10; Boyce Decl. ¶ 10, Ex. 3.

In October and November 2010 and April 2011, Adobe, through the Software and Information Industry Association (SIIA), sent

3

take-down notices to eBay regarding Defendants' sale of Adobe OEM products through that website.  Kornrumpf Decl. ¶¶ 6, 13; Wang Decl. in Support of Pl.'s Opp. to Defs.' Mot. for a Prelim. Inj., Docket No. 75, ¶ 3, Ex. M.  After receiving the notices this year, eBay ceased allowing Defendants to sell Adobe products through its website, until and unless Defendants provide eBay with a court order or other resolution of the instant lawsuit allowing Defendants to resume these sales.  Kornrumpf Decl. ¶ 13.

On July 20, 2011, Adobe's investigator purchased an OEM copy of Adobe Acrobat 8 Standard from Defendants' website.  Boyce Decl. ¶ 10, Ex. 3.  During its deposition of Defendants on August 16 and 18, 2011, Adobe learned that Defendants have also continued to sell Adobe OEM products through other means, including to other suppliers and directly to other past customers, and that they intend to continue to do so.  Kornrumpf Depo. Tr. 21:16-23:11; 103:13-23.

On November 2, 2011, Adobe filed the instant motion seeking a preliminary injunction prohibiting Defendants from engaging in any business whatsoever with any unauthorized Adobe products, pending the outcome of this litigation.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction

4

is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Alternatively, "a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates irreparable harm and shows that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation and editing marks omitted).

A court employs a sliding scale when considering a plaintiff's showing as to the likelihood of success on the merits and the likelihood of irreparable harm. Id. "Under this approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." Id.

## DISCUSSION

Defendants argue that Adobe has not established any of the relevant factors under Winter and that their proposed injunction is overly broad.

I. Likelihood of Success on the Merits

Adobe argues that it is likely to succeed on the merits, because it licenses, rather than sells, its software and retains the right to distribution of the software, and Defendant sells Adobe's OEM software in violation of Adobe's licensing restrictions on these products.

5

"Copyright is a federal law protection provided to the authors of 'original works of authorship,' including software programs." Vernor v. Autodesk, Inc., 621 F.3d 1102, 1106 (9th Cir. 2010) (citing 17 U.S.C. §§ 101-103). "The Copyright Act confers several exclusive rights on copyright owners, including the exclusive rights . . . to distribute their works by sale or rental." Id. at 1106-07 (citing 17 U.S.C. § 106(3)). Copyright infringement occurs whenever someone "violates any of the exclusive rights of the copyright owner," including the exclusive distribution right. 17 U.S.C. §§ 106(3), 501. "The exclusive distribution right is limited by the first sale doctrine, an affirmative defense to copyright infringement that allows owners of copies of copyrighted works to resell those copies." Vernor, 621 F.3d at 1107. However, this affirmative defense is unavailable to "those who are only licensed to use their copies of copyrighted works." Id. "[A] software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." Id. at 1111.

Defendants do not dispute the evidence that they distribute Adobe software in a way that does not comply with the restrictions that Adobe has placed on distribution. Instead, Defendants' opposition relies entirely on their challenge to Adobe's argument that the first sale doctrine is not applicable to this case.

However, there is substantial evidence before the Court, which Defendants have not submitted any evidence to rebut, that Adobe's distribution agreements meet the <u>Vernor</u> requirements, namely that they specify that the user is granted a license, they significantly restrict the user's ability to transfer the software, and they impose notable use restrictions.

Accordingly, the Court finds that Adobe has made a strong showing that it is likely to prevail on its copyright infringement claim.

## II. Irreparable Harm

Adobe argues that, without an injunction, it will suffer irreparable harm, because of the placing of unauthorized goods into the stream of commerce, damage to customer confidence that Adobe will provide them with a high quality, genuine product, backed by quality customer service, interference with Adobe's ability to ensure that their products are only bundled with high quality goods and loss of the unique personality and allure of its products.

Defendants' primary argument against a finding of irreparable harm is the amount of time that it took for Adobe to file for a preliminary injunction. Defendants argue that Adobe knew that Defendants continued to sell these products throughout the pendency of this action and cannot now credibly argue that it is at risk of irreparable harm.

The evidence in the record does not support Defendants' argument. For most of the time since the lawsuit was filed, Defendants offer proof only that Adobe knew that Defendants were continuing to sell the products on eBay, not through other channels. That Adobe knew that Defendants were selling their products on eBay does not undercut a finding of irreparable harm, because Adobe took steps to stop Defendants from selling their products on eBay by taking action directly with eBay. There is evidence in the record that Adobe learned of the continued sales through means other than eBay in two ways: through its investigator's purchase of an OEM copy of Adobe Acrobat 8 Standard from Defendants' website on July 20, 2011; and through a deposition that took place on August 16 and 18, 2011. See Kornrumpf Depo. Tr. 1; Boyce Decl. ¶ 10, Ex. 3. Adobe filed this motion on November 2, 2011. Thus, Adobe filed this motion about two and a half to three and a half months after it found out that Defendants were continuing to sell its products through means other than eBay. However, while this relatively short delay weighs slightly against a finding of irreparable harm, it is not determinative when compared to the harm of which Adobe complains.

Defendants also argue that the harm that Adobe complains of is "negligible at best." Opp. at 10. Defendants state that Adobe has already been paid for the software by the OEM manufacturer and that Defendants are selling the unaltered and authentic OEM

8

software in "sleeve only packaging," the same condition that Adobe allows manufacturers to sell the software to users. Id. at 10-11.

However, Defendants' argument fails to recognize the differences between the Adobe's OEM software and retail software, which harms their customers' experiences and Adobe's reputation. Adobe testifies that its OEM software generally does not come with the same level of customer service as its retail software and that unauthorized sales harm its relationship and reputation with consumers when Adobe is unable to provide support to consumers who did not know they were receiving restricted software, which Adobe testifies has happened many times. Stickle Decl. ¶¶ 7, 12. Defendants' sale of unbundled OEM products also interferes with Adobe's attempts to control distribution of software and offer discounted licenses to those who fall into a particular category, such as those who have purchased a particular piece of hardware. Id. at ¶¶ 6-7.

The harm to Adobe's reputation, goodwill and ability to control the distribution of its software is sufficient to establish irreparable harm. See, e.g., Apple Inc. v. Psystar Corp., 673 F. Supp. 2d 943, 949, 949 n.2 (N.D. Cal. 2009), aff'd, 658 F.3d 1150 (9th Cir. 2011) (citing Rent-a-Center, Inc. v. Canyon Television & Appliance, 944 F.2d 597, 603 (9th Cir. 1991)). Further, the fact that the harm that Adobe will suffer is difficult to quantify also supports a finding of irreparable harm. Rent-a-Center, 944 F.2d at 603 (upholding district court's finding

9

that damages that are "difficult to valuate . . . thus constituted possible irreparable harm").

## III. Balance of Equities

Defendants argue that, if the requested injunction is granted, their business "would be effectively shut down," and that thus the balance of hardships weighs in their favor. However, Defendants' sworn statements do not actually support a finding that they will no longer be able to conduct any business whatsoever if the proposed preliminary injunction were issued. Further, being prevented from selling software that one is not authorized to sell does not constitute a hardship. Accordingly, the Court finds that, in light of the irreparable harm to Adobe described above, the balance of equities favors Adobe.

## IV. The Public Interest

Both parties agree that the relevant question for this factor is whether the proposed injunction will disserve the public interest, not whether it will promote the public interest. Opp. at 4; Reply, at 7. Defendants make no argument that the public interest will be disserved by the proposed injunction, and instead seek to refute Adobe's argument that the public interest will be served by prohibiting deceptive practices that mislead customers. Defendants repeat their earlier argument that customers are not misled by their sales activity, because they sell genuine Adobe products. However, Defendants again do not address the previously described evidence of the differences between Adobe's OEM and

10

retail products.  Accordingly, the Court finds that a preliminary injunction is in the public interest.

V.    Breadth of the Requested Preliminary Injunction

The Court, however, is persuaded by Defendants' argument that the proposed preliminary injunction is overly broad, because it prohibits them from "engaging in any business whatsoever with any unauthorized Adobe products" without specifying what the prohibited business practices and products are.  Accordingly, the Court limits the preliminary injunction to prohibit Defendants from "selling, offering for sale, distributing, or transferring any Adobe Original Equipment Manufacturer (OEM) product separately from the hardware with which it was licensed to be distributed."

CONCLUSION

For the reasons set forth above, Adobe's motion for a preliminary injunction is GRANTED in part (Docket No. 109).  A preliminary injunction will be entered as a separate document.

IT IS SO ORDERED.

Dated: 12/16/2011

CLAUDIA WILKEN
United States District Judge

11