IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ADOBE SYSTEMS INCORPORATED,

    Plaintiff,

  v.

HOOPS ENTERPRISE LLC; and ANTHONY KORNRUMPF,

    Defendants.
_____/

AND ALL RELATED CLAIMS
_____/

No. C 10-2769 CW

ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 135)

    Plaintiff Adobe Systems LLC moves for partial summary judgment, finding the first sale defense inapplicable and granting judgment in its favor on the counterclaim against it brought by Defendants Anthony Kornrumpf and Hoops Enterprise, LLC.[1] Defendants oppose Adobe's motion. Having considered the papers submitted by the parties and their oral arguments at the hearing, the Court GRANTS Adobe's motion.

---

[1] In the title of its motion, Adobe states that it seeks summary judgment "finding no contractual release of OEM sales," among other things. Mot. at i. However, Adobe did not move on this basis in its papers or address this topic in any way. Accordingly, the Court assumes that Adobe titled its motion in error.

BACKGROUND[2]

Adobe initiated this copyright and trademark infringement lawsuit on June 24, 2010, alleging that Defendants sell Adobe software through the use of the Internet auction site eBay and the website www.lookoutdeals.com, among other services, and that Adobe has not licensed Defendants to make or distribute copies of its software. Adobe also alleges that Defendants use, without a license, images similar or identical to Adobe trademarks as part of their online business. Adobe seeks relief pursuant to the Copyright Act, 17 U.S.C. §§ 101, et seq., and the Lanham Act, 15 U.S.C. §§ 1501, et seq.

Defendants filed counterclaims against Adobe for a declaratory judgment of copyright misuse and violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code §§ 17200, et seq. In particular, Defendants contend that Adobe misuses its copyrights by asserting them in contravention of the first sale doctrine, as codified in 17 U.S.C. § 109. Defendants also assert copyright misuse and the first sale doctrine as affirmative defenses. Answer ¶¶ 10, 23.

On January 19, 2011, the Court dismissed Defendants' original counterclaims. Docket No. 47. Defendants then filed their First Amended Counterclaims, re-alleging both of their counter-claims.

---

[2] Adobe has objected to some of the evidence submitted by Defendants. Because the evidence to which Adobe has objected was not material to the Court's decision, Adobe's objections are overruled as moot.

2

Docket No. 50. On July 25, 2011, the Court dismissed with prejudice Defendants' counterclaim for declaratory judgment of copyright misuse but denied Adobe's motion to dismiss Defendants' UCL counterclaim. Docket No. 94.

Adobe states that it distributes software for which it holds the copyright pursuant to restricted licensing agreements and does not transfer title to the software at any time. Coombs Decl. ¶ 2, Ex. A (Stickle Decl.) ¶ 5. The licensing agreements restrict the use, location of distribution, transfer and sometimes who is qualified to obtain the product. Id. One type of restricted software that Adobe distributes is Original Equipment Manufacturer (OEM) products that are distributed in a bundle with approved hardware components. Id. at ¶ 7. The bundles are product-specific and Adobe's product may not be unbundled and sold separately or re-bundled with products not previously approved by Adobe. Id.

Defendants acknowledge that they have sold OEM copies of Adobe's software and that the software they have sold comes from several companies, including Dell and Hewlett-Packard. Opp. at 2, 8-9, 11; Kornrumpf Decl. ¶¶ 3, 5; Coombs Decl. ¶ 3, Ex. B (Kornrumpf Depo.) Tr. 20:5-6. Defendants admit that "[o]ne specific title of software that originated through Dell that Defendants have sold is Photoshop Elements 8." Opp. at 8-9. Defendants further concede that "[o]ne specific tile of software

3

that originated through Hewlett Packard Company that Defendants have sold is Premiere Pro CS4." Id. at 11.

Defendants obtain Adobe OEM versions of software that have been unbundled from the hardware with which they were originally packaged. Kornrumpf Depo. Tr. 148:18-149:10. Defendants then sell the software. See, e.g., id. at 14:2-6, 43:5-45:6. When they sell Adobe OEM software, Defendants generally package it with items such as a piece of photo paper, a blank DVD, or a media card reader, which Adobe had not authorized for bundling. Stickle Decl. ¶¶ 9, 10; Kornrumpf Depo. Tr. 43:12-45:16. Defendants have not bundled OEM software that originally came with OEM hardware with these types of products when Defendants have sold that OEM software. Kornrumpf Depo. Tr. 143:2-8.

Adobe, through an investigator, made several test purchases of Adobe OEM software from Defendants through their eBay monikers. Coombs Decl. in Supp. of Mot. for Prelim. Inj. ¶ 3, Ex. B (Fernandez Decl.) ¶¶ 5-11; Stickle Decl. ¶¶ 9, 10. Some of the products it purchased were meant for an overseas market, "were manufactured abroad and were not meant to be imported into the United States." Stickle Decl. ¶ 9.

In conjunction with Defendants' prior motion for a preliminary injunction, Defendants proffered evidence of a form contract Adobe uses with hardware manufacturers for the distribution of its software. See Boyce Decl. in Supp. of Defs.' Mot. for Prelim. Inj., Docket No. 69, ¶ 15. The contract states

4

that Adobe provides only licenses to the manufacturer and that the manufacturer "shall not at any stage have title to the physical property or the Intellectual Property in the Software Products." Boyce Decl. in Supp. of Defs.' Mot. for Prelim. Inj., Ex. E, Docket No. 87, ¶ 12.3.

With their opposition to the instant motion, Defendants have submitted copies of Adobe's contract with Hewlett-Packard governing the distribution of software, including Photoshop Elements 8, and Adobe's contract with Dell governing distribution of software, including Premiere Pro CS4. See Boyce Decl. ¶¶ 10-13, 15-16, Exs. F, G, H, I, K, L.[3] These contracts resemble the form contract that Defendants previously submitted.

Adobe's agreement with Dell is titled as a licensing agreement. Boyce Decl. ¶ 10, Ex. F at 1. In the agreement, Adobe specifies that Dell is granted a license and requires Dell to obtain a similar agreement with any third-parties prior to authorizing or sublicensing the software to them. Id. at ¶ 2.1. Adobe retains ownership of intellectual property rights in the software and places substantial restrictions on Dell's use of the software. Id. at ¶¶ 2.1, 2.4, 2.5. Adobe also prohibits Dell from promulgating the software through specified means and requires that the software be bundled with specified Dell hardware. Id. at ¶¶ 2.1, 2.5; Boyce Decl. ¶ 11, Ex. G at ¶ 2.0.

---

[3] Because these exhibits were filed under seal, the Court describes their content in general terms in this Order.

5

Dell is obliged to take steps to prevent resellers from selling the software separately from this hardware. Boyce Decl. ¶ 10, Ex. F at ¶ 2.1. Dell is required to include Adobe's end-user license agreement with the hardware in such a way that the user can read it before accessing the software media and must include Adobe's "copyright and proprietary notices." Id.

Adobe's agreement with Hewlett Packard is also titled as a licensing agreement and contains terms similar to Adobe's agreement with Dell. Boyce Decl. ¶¶ 15-16, Exs. K, L. For example, it requires that the software be bundled with specified HP hardware. Boyce Decl. ¶ 15, Ex. K, at ¶¶ 1.5, 3.1. It also contains similar use restrictions to those in the agreement with Dell. Id. at ¶ 3.7.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg,

6

815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence of a material fact on such issues, or to support its motion with evidence negating the non-moving party's claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990);

7

Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the non-moving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.

If the moving party discharges its burden by negating an essential element of the non-moving party's claim or defense, it must produce affirmative evidence of such negation. Nissan, 210 F.3d at 1105. If the moving party produces such evidence, the burden then shifts to the non-moving party to produce specific evidence to show that a dispute of material fact exists. Id.

If the moving party does not meet its initial burden of production by either method, the non-moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

## DISCUSSION

Defendants do not dispute that their counterclaim against Adobe is valid only if the first sale doctrine applies to this case and the Court finds that "Plaintiff has been selling, not licensing, copies of its software products to certain OEM companies." Opp. at 16.

"Copyright is a federal law protection provided to the authors of 'original works of authorship,' including software

8

programs." Vernor v. Autodesk, Inc., 621 F.3d 1102, 1106 (9th Cir. 2010) (citing 17 U.S.C. §§ 101-103). "The Copyright Act confers several exclusive rights on copyright owners, including the exclusive rights . . . to distribute their works by sale or rental." Id. at 1106-07 (citing 17 U.S.C. § 106(3)). Copyright infringement occurs whenever someone "violates any of the exclusive rights of the copyright owner," including the exclusive distribution right. 17 U.S.C. §§ 106(3), 501. "The exclusive distribution right is limited by the first sale doctrine, an affirmative defense to copyright infringement that allows owners of copies of copyrighted works to resell those copies." Vernor, 621 F.3d at 1107. See 17 U.S.C. § 109(a) ("Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord.").

Adobe argues, and Defendants do not dispute, that the first sale doctrine does not apply to Adobe products that were manufactured abroad. See Omega S.A. v. Costco Wholesale Corp., 541 F.3d 982, 985 (9th Cir. 2008) (limiting the first-sale doctrine to domestically-made copies of copyrighted works).

The Ninth Circuit has also held that the first sale affirmative defense is unavailable to "those who are only licensed to use their copies of copyrighted works." Vernor, 621 F.3d at

9

1107. "[A] software user is a licensee rather than an owner of a copy where the copyright owner (1) specifies that the user is granted a license; (2) significantly restricts the user's ability to transfer the software; and (3) imposes notable use restrictions." Id. at 1111.

Defendants argue that the license agreements between Adobe and the OEM manufacturers do not create significant restrictions on the transfer of the OEM copies or impose notable use restrictions on these copies. However, the undisputed evidence in the record clearly establishes that Adobe transferred a license rather than title to these products. Adobe's license agreements specify that they grant a license. Stickle Decl. ¶ 5; Boyce Decl. in Supp. of Defs.' Mot. for Prelim. Inj., Ex. E ¶ 12.3; Boyce Decl. ¶ 10, Ex. F at ¶ 2.1; Boyce Decl. ¶ 15, Ex. K at 1. The licensing agreements impose significant transfer restrictions, including those at Stickle Decl. ¶ 5; Boyce Decl. ¶ 10, Ex. F at ¶ 2.1; ¶ 11, Ex. G at ¶ 2.0; ¶ 15, Ex. K, at ¶¶ 1.5, 3.1. The agreements also impose significant use restrictions, such as those at Stickle Decl. ¶ 5; Boyce Decl. ¶ 10, Ex. F at ¶ 2.5; ¶ 15, Ex. K, at ¶ 3.7.

Defendants further argue that Adobe does not maintain sufficient control over the OEM copies to support a finding that it remained the owner of them. Defendants base their argument on UMG Recordings, Inc. v. Augusto, 628 F.3d 1178 (9th Cir. 2011). In UMG Recordings, the Ninth Circuit held that a music company

10

transferred ownership of copies of a promotional CD, despite its attempts to create a license, when it shipped the CDs to recipients, with no prior agreement or request by the recipients to receive the CDs.  628 F.3d at 1182-83.  However, the court in UMG Recordings specifically distinguished the Vernor test that "applies in terms to software users," who "are in a very different position from that held by the recipients of UMG's promotional CDs."  Id. at 1183.  Further, Adobe maintains far more control over the distribution of its software than the music company did in UMG Recordings, as evidenced by the significant distribution restrictions in its licensing agreements.

Because Adobe licenses, rather than sells, its OEM software, the Court finds that the first sale doctrine does not apply to the Adobe OEM software at issue in this case.  The Court also finds that the first sale doctrine does not apply to the Adobe OEM software that is manufactured abroad.  Because Defendants' UCL counterclaim against Adobe and their copyright misuse and first sale affirmative defenses are all based on the applicability of the first sale doctrine to this case, the Court GRANTS Adobe's motion for partial summary judgment.

CONCLUSION

For the reasons set forth above, the Court GRANTS Adobe's motion for partial summary judgment (Docket No. 135).

IT IS SO ORDERED.

Dated: 2/1/2012

CLAUDIA WILKEN
United States District Judge