J. Andrew Coombs (SBN 123881)
*andy@coombspc.com*
Annie S. Wang (SBN 243027)
*annie@coombspc.com*
J. Andrew Coombs, A Professional Corporation
517 East Wilson Avenue, Suite 202
Glendale, California 91206
Telephone: (818) 500-3200
Facsimile: (818) 500-3201

Attorneys for Plaintiff
Adobe Systems Incorporated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| Adobe Systems Incorporated,<br><br>　　　　　　　Plaintiff,<br>　v.<br>Tony Kornrumpf and Does 1 – 10, inclusive,<br>　　　　　　　Defendants. | Case No.: C 10-2769 CW<br>**[REDACTED]**<br>**REPLY MEMORANDUM OF PLAINTIFF ADOBE SYSTEMS INCORPORATED IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PURPORTED DEFENSE OF RELEASE**<br><br>Date: June 14, 2012<br>Time: 2:00 p.m.<br>Court: Hon. Claudia Wilken |

## INTRODUCTION

Plaintiff Adobe Systems Incorporated ("Adobe") files this Reply in support of its Motion for Summary Judgment on the purported "release" defense, never properly pled or made the subject of disclosures.[1] Defendants Tony Kornrumpf ("Kornrumpf") and Hoops Enterprises, LLC ("Hoops" and collectively "Defendants") fail to justify how a June 2009 settlement agreement ("June 2009 Agreement") entered into between Adobe and Kornrumpf in resolution of a prior claim against Kornrumpf ("Kornrumpf One") acts as bar against the claims asserted by Adobe and the remedies sought on the present claims. Defendants having conceded that the purported defense

---

[1] Adobe will not, accordingly, restate those arguments already advanced evidencing the numerous procedural defects in Defendants' purported defense, namely: (i) that it was never pled as an affirmative defense; (ii) that the evidence relied upon in support of the affirmative defense was never disclosed as required by Fed. R. Civ. P. 26; (iii) that much of the evidence relied upon even by way of opposition to this motion was not designated in Defendants' exhibit and witness lists; and (iv) the defense creates inappropriate potential conflicts for counsel representing both Adobe and Defendants insofar as they were designated as prospective witnesses.

Adobe v. Kornrumpf, et al.: Reply in Support of Motion for Summary Judgment - 1 -

is inapplicable to Hoops, see Docket No. 188 at pp. 5:3-8, 8:18-23, it is similarly inappropriate for application to Kornrumpf as a matter of law.

# ARGUMENT

### I. There Is No Ambiguity in the Release Agreement.

#### a. There Is No Question Concerning the Parties Intent Under the June 2009 Agreement.

Defendants' belated efforts notwithstanding, there is no ambiguity in the June 2009 Agreement regarding the scope of the release granted Kornrumpf. As admitted by Kornrumpf, Kornrumpf One addressed his sale of Adobe academic ("EDU") software. ***REDACTED*** ***REDACTED******REDACTED******REDACTED******REDACTED*** ***REDACTED******REDACTED******REDACTED******REDACTED*** Defendants' argument and evidence regarding purported sales of OEM merchandise before the effective date of the June 2009 Agreement is, effectively, immaterial. ***REDACTED*** ***REDACTED******REDACTED******REDACTED******REDACTED*** ***REDACTED******REDACTED******REDACTED***  is a normal part of the give-and-take of settlement negotiations. Nothing more. Nothing less.

#### b. Even According To Defendants' Own Strained Construction, There is No Ambiguity As the June 2009 Agreement Does Not Bar Sales of OEM Software Consistent with the Terms of Adobe's Underlying License Agreements.

Defendants' Opposition makes clear that they still act as though they do not understand the difference between a non-infringing distribution of OEM software consistent with the terms of license restrictions (i.e. where the Adobe software is bundled with the hardware for which it was originally authorized) and an infringing sale of OEM software which violates the provisions of the Adobe license and which this Court has already found characterizes the sales of Adobe software by Defendants herein.

Kornrumpf was not barred from selling OEM software, either by the Injunction entered in Kornrumpf One or by the June 2009 Agreement. Instead, each party reserved its rights:

Kornrumpf to sell Adobe software in a manner which conformed with Adobe licenses and Adobe to sue Kornrumpf should he sell in violation of those licenses. The only difference between the settlement in Kornrumpf One and the numerous other (irrelevant) cases filed on behalf of Adobe and cited by Defendants is that Adobe would be required to re-file against Kornrumpf for infringing sales of Adobe OEM software. \*\*\*REDACTED\*\*\*\*\*\*REDACTED\*\*\* \*\*\*REDACTED\*\*\*\*\*\*REDACTED\*\*\*\*\*\*REDACTED\*\*\*\*\*\*REDACTED\*\*\*\* \*\*\*REDACTED\*\*\*\*\*\*REDACTED\*\*\*

Defendants recognize this interpretation of the June 2009 Agreement in their Opposition where they admit that the Parties "never reached a formal agreement over the sale of "OEM" software," and that "Plaintiff would not/could not agree to a formal license for Defendant to sell OEM." Opposition Papers, p. 6:23-25.

**II.     Even Assuming, Arguendo, an Ambiguity in the June 2009 Agreement, Parole Evidence Shows that the Ambiguity is Resolved in a Manner Which Does Not Release the Conduct at Issue in This Litigation.**

**a.     The Most Compelling Evidence of the Parties' Objective Intent Are the Circumstances Under Which the Agreement Was Made, Which Demonstrate an Intention Only to Release Liability for Sales of Academic Software.**

There is no dispute that the June 2009 Agreement was a settlement agreement intended to resolve Adobe's claims against Kornrumpf concerning his infringing sales of EDU software outside the channels permitted by the license agreements governing such software. As such, the fact that it was the parties collective intention to resolve those claims which must inform any interpretation of any purported ambiguity in the parties' objective intention. California Civil Code, § 1647 ("A contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates.").

Accordingly, should the Court conclude that it is appropriate to consider parole evidence in interpreting the June 2009 Agreement, Adobe respectfully submits that the primary evidence is the overall nature of the agreement and its purpose: to resolve Adobe's claim concerning EDU

software and to leave for another day speculative claims which were not before the Court in Kornrumpf One.[2]

### b. Post-Agreement Conduct Does Not Evidence an Intent to Release Kornrumpf From Infringing Sales of OEM Merchandise.

The final straw in Defendants' arguments seeking to invoke the June 2009 Agreement requires the Court to conclude that Adobe's decision to (i) seek to take down multiple auctions posted by Kornrumpf in October, 2009 and November 2009; (ii) engage in extensive investigation of Kornrumpf's misleading offers in order to buttress its claims against Kornrumpf prior to initiating litigation; and (iii) to file suit in June, 2010 all evidence a "course of conduct" which evidences Adobe's intention to release Kornrumpf. This is unfounded.

Defendants' argument that the failure to take "more" aggressive action after filing of the lawsuit evidences acquiescence is equally nonsensical. Filing and service of the lawsuit makes waste of that argument.

More accurately, as set forth in greater detail in the Wang declaration and upon facts largely undisputed by Defendants, Defendants were not going to stop selling Adobe software until they were forced to by the Court. Prior to the initiation of the present matter, Adobe informed Kornrumpf directly that his OEM activities were not authorized. Declaration of Annie S. Wang, Docket No. 214 ("Wang Decl.") at ¶¶ 2, 8, Exs. A and D. Complaints and inquiries regarding Defendants were forwarded to Adobe from various sources, including Defendants' customers for several months. *Id.* at ¶ 14. Adobe sought through eBay directly, termination of infringing auctions which could be identified on two separate occasions before the lawsuit was filed. *Id.* at ¶¶ 9-11. Rather than accepting the notices, Kornrumpf instead issued "counter-notices" to relist the items, forcing Adobe to engage in a more extensive investigation. *Id.* at ¶¶ 9, 13. This

---

[2] Significantly, in arguing in support of the introduction of parole evidence, Defendants fail to adduce any material evidence on the parties' objective intention apart from the parties' course of conduct (addressed *infra*). Clearly, it is reasonable to infer that there is no parole evidence from the negotiations supporting the Defendants' tortured construction of the release, otherwise they would have attempted to introduce it.

Adobe v. Kornrumpf, et al.: Reply in Support of Motion for Summary Judgment (Release) - 4 -

investigation was necessitated, in part, by Defendants' own misleading listings which do not indicate that the goods are OEM. This action followed within months.

Defendants also attempt to make much of the fact that further notices were not sent on behalf of Adobe (again) until April 2011, ignoring significant and time consuming motion practice and discovery disputes as well as the time and effort spent on preparations for an ultimately unsuccessful mediation. Wang Decl. at ¶ 16. Regardless, none of the facts raised by Defendants supports any "course of conduct" theory of an implied license.

Moreover, while Defendant apparently now asserts that the Settlement Agreement granted him a blanket right to sell Adobe OEM software without its attendant hardware (such as a new computer, etc.), such a license does not and cannot exist as a matter of law. By definition, "OEM" software is OEM by virtue of its pairing with specified original equipment (among other licensing restrictions). Defendants pairing of his OEM products with nothing, or, with photo paper, blank DVDs or unrelated, low end media card readers fail to legitimize his infringing activities.

### c. There is No Conflicting Language in the June 2009 Agreement Which Supports Defendants' Strained Interpretation of Defendants' Rights.

By their Supplemental Opposition, Defendants strain to interpret the contract in a manner it plainly does not support.  ***REDACTED******REDACTED******REDACTED***
***REDACTED******REDACTED******REDACTED*******REDACTED***
***REDACTED******REDACTED******REDACTED******REDACTED***
To the contrary and as already addressed in connection with Defendants' motions in limine numbered 1 and 2, there is no dispute concerning sales (even of OEM) which may have occurred before the effective date of the June 2009 Agreement. Those sales, if indeed there were any, are included within the release and all language in the June 2009 Agreement can be given its intended meaning without straining to confer affirmative rights to engage in other activity explicitly prohibited by the universe of Adobe license agreements.

### d. Further Argument in Defendants' Supplemental Opposition Regarding Defendants' Reasonable Beliefs and Delay Are Beyond the Scope of the Present Motion.

Tacitly acknowledging the poverty of their arguments on strict contract interpretation, Defendants attempt to bootstrap additional, immaterial arguments in their Supplemental Opposition:  first by arguing that Adobe "delayed" for a period of about seven months before filing suit and while it investigated Defendants' activities to Defendants' detriment (Supplemental Opposition, 8:8-9:2; 10:7-21) and, second, by arguing that Defendants' belief concerning his right to sell OEM software was reasonable (Supplemental Opposition, 9:3-10:6) while at the same time conceding that the June 2009 conferred no affirmative rights regarding the sale of OEM product apart from a release of sales which may have occurred before June, 2009 (Opposition Papers, p. 6:23-25).

While Adobe disputes these assertions, their resolution is immaterial for purposes of this motion for summary judgment which addresses only the belated purported defense of release. To the contrary, if Defendants truly believed that this defense operated to permit the sale of OEM merchandise, rather than obstructing Adobe's efforts to bring this purported defense to the attention of the Court (albeit after the dispositive motion cutoff), they would have affirmatively asserted the defense at the outset or through various points in the litigation when the opportunity was presented.[3]  They failed to do so.  For example, Kornrumpf opposed Adobe's motion for preliminary injunction with a lengthy brief arguing the merits of the case and Kornrumpf's defenses, vehemently arguing that an injunction would effectively "shut down" Hoops' business and cause "Hoops irreparable harm."  Docket No. 118 at pp. 11-12.  But nowhere in this allegedly-critical brief does Kornrumpf mention his now-asserted defense that the prior settlement agreement supposedly permitted him to sell OEM software.

---

[3] As noted in the Declaration of Annie S. Wang, when it became apparent that Defendants' intended to belatedly assert this defense, Adobe sought Defendants' stipulation to a late filed dispositive motion (or an early filed motion in limine) to address the issue.  Wang Decl. at ¶ 21.  Defendants' assertion that they "first" learned that Adobe "challenged" the Defendants' right to sell OEM under the June 2009 Agreement during the pretrial disclosure process is patently false.

## CONCLUSION

For the foregoing additional reasons, Adobe respectfully requests that its motion for summary judgment on the purported release agreement be granted.

Dated: June 8, 2012                           J. Andrew Coombs, A Professional Corp.

                                                      By:   /s/ J. Andrew Coombs
                                                             J. Andrew Coombs
                                                             Annie S. Wang
                                                      Attorneys for Plaintiff Adobe Systems Incorporated